**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|                           |     |                                  |
|---------------------------|-----|----------------------------------|
| BRUCE CLARK RELIFORD,     | )   |                                  |
|                           | )   |                                  |
|        Movant,            | )   |                                  |
|                           | )   | Cv. No. 2:14-cv-02163-JPM-cgc    |
| v.                        | )   | Cr. No. 2:93-cr-20107-JPM-1      |
|                           | )   |                                  |
| UNITED STATES OF AMERICA, | )   |                                  |
|                           | )   |                                  |
|        Respondent.        | )   |                                  |
|                           | )   |                                  |

**ORDER DENYING MOTION TO APPOINT COUNSEL,**
**DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,**
**DENYING CERTIFICATE OF APPEALABILITY,**
**CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH**
**AND**
**DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), filed by Movant, Bruce Clark Reliford, Bureau of Prisons ("BOP") register number 14320-076, who is currently incarcerated at the United States Penitentiary in Yazoo City, Mississippi. (§ 2255 Mot., *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Court DENIES the § 2255 Motion.

## I. PROCEDURAL HISTORY

### A. Criminal Case Number 93-20107

On April 19, 1993, a federal grand jury returned a three-count indictment against Reliford. (Indictment, *United States v. Reliford*, No. 2:93-cr-20107-JPM-1 (W.D. Tenn.), ECF No. 1.) On December 26, the grand jury returned a four-count superseding indictment against

Reliford.  (Superseding Indictment, *id.*, ECF No. 26.)  On January 19, 1994, the grand jury returned a four-count second superseding indictment charging that, on or about December 24, 1992, Reliford (1) took a Toyota automobile by force, violence, and intimidation, in violation of 18 U.S.C. § 2119; (2) knowingly carried and used a firearm during and in relation to the carjacking, in violation of 18 U.S.C. § 924(c); (3) robbed Total Petroleum, Inc. (Vicker's Service Stations) by means of actual and threatened force, violence, and fear of injury, in violation of 18 U.S.C. § 1951; and (4) knowingly used and carried a firearm during and in relation to the robbery, in violation of 18 U.S.C. § 924(c).  (Second Superseding Indictment, *id.*, ECF No. 36.)  The factual basis for the charges is stated in the presentence investigation report ("PSR"):

## Offense Conduct

10.    The investigation revealed the following: At approximately 5:00 a.m. on Christmas Eve 1992, Bruce Reliford awakened Vita Lynn Powell with a telephone call to her residence.  Reliford asked Powell to come get him and take him to see about a friend who was in trouble.  Powell dressed and picked up Reliford in Frayser.  The two got on the expressway and exited at Covington Pike.  When they arrived at Covington Pike and Raleigh-LaGrange, Reliford told Powell to park over at the car wash.  At this point Powell saw a gun sticking out of Reliford's pocket.  After he instructed Powell to pull off at the car wash, Reliford changed his mind.  Reliford then told Powell to let him out, which she did.  She asked if he wanted her to wait on him.  Initially he responded no, then changed her mind and asked her to wait on him.  She waited in some apartments down the street.

11.    Shortly after being let out of the vehicle at approximately 6:45 a.m., Reliford walked into the Vickers gas station at 2510 Covington Pike.  There were three employees inside, Cynthia Coleman, Karen Yarber, and Denise Thigpen.  Denise Thigpen was in the back office.  Cynthia Coleman and Karen Yarber were up front when they noticed a black male come in wearing a green shiny jacket.  When he proceeded around the counter, Ms. Coleman said, "Sir, you can't come behind the counter."  At that point, he pulled the gun out of his right pocket.  He said, "Bitch, get in the back."  Ms. Coleman and Ms. Yarber raised their hands and were saying "please don't shoot me."

12.    Reliford then pulled employees Cynthia Coleman and Karen Yarber to the back office where Denise Thigpen was sitting.  He told Thigpen to get up

2

and he told all three to come out. Reliford took Yarber and Thigpen to the restroom; he kept Cynthia Coleman out front, and told her as he exited, "Bitch, open the safe." After returning from the bathroom he came back, led her to the safe, and said "Get down there and open the safe." Coleman responded "Okay, please don't shoot me. I'll open up the safe." Coleman tried to open the safe, but was nervous and couldn't open it. Reliford told Coleman again, "Bitch, hurry up and open the safe or I'm going to blow your fucking brains out." Coleman continued to plead with him, "I have three children. Please don't kill me. I'm going to give you everything we've got, just don't shoot." Reliford kept saying, "Open the goddamn safe. What's taking you so long to open the motherfucking safe[?]" Some customers then pulled up and Reliford started waiving [sic] his hands, saying "The pumps are down. The pumps are down." A man came to the window. Reliford instructed Coleman to get up. Coleman waited on the customer and the man asked for $3.50 in gas. After the man left and went to the pump, Reliford told Coleman to "Get down there and open up that damn safe." He walked around the door and came back. He said "You better open that motherfucking safe and open it now or I'm going to blow your fucking brains out." About that time, Denise Thigpen came out of the bathroom. Reliford turned around and said, "Bitch, [w]hat did you come out of that bathroom for?" He said, "If you touch that bathroom door again or come out her[e] again, I'm going to kill this bitch" (referring to Coleman). Reliford came back to the front where Coleman was and said, "Bitch, you haven't got that safe open yet? Did you touch that phone?" Coleman said "No, I haven't touched no phone." He said, "If one motherfucking police car pulls up on this lot, bitch, I'm going to go to jail for murder because I'm going to blow your fucking brains out. Now open the goddamn safe." Ms. Coleman testified that Reliford held the gun to her head and hit her head with the gun while making demands and threats.

13.     At that time, Coleman finally got the safe open, took the top out, and pulled out the float bag. Reliford got a brown paper sack. He looked at the float bag and said "Open up the bottom." Coleman opened up the bottom and gave him the money. He then said, "Get up and don't run." Coleman begged "Please don't shoot me, please don't shoot me". Reliford walked Coleman to the men's bathroom and placed her inside. After Coleman was placed in the men's bathroom, Reliford then went to the other two women. The women were hesitant to open the door, but Reliford made threats on Coleman's life if they didn't open it. They opened the door and, with his gun pointed at them, he told Karen Yarber to give him her car keys. She was fumbling in her pockets for her keys and taking too long. He said, "Come on bitch. Give me them keys." She finally got her keys out and all of the contents spilled on the floor. She gave him the keys and he closed the door. Yarber and Thigpen then locked the door from the inside. About that time, two other individuals

were coming into the store.  Reliford passed them going out, stating the people inside would help them, and then ran behind the store.  Several minutes passed, when the two women heard Ms. Coleman outside the door, asking them to open it so she could come in.

14.     All three of the Vickers employees identified Bruce Clark Reliford as the person responsible for the robbery.  Additionally, store security camera video taped the robbery.  It was determined that approximately $5,000 had been taken in the robbery.  Although Reliford took the keys from one of the employees, her car was never moved.

15.     A few minutes after the robbery, the Vickers employees noticed a commotion at the Toddle House, a restaurant directly across the street.  About that time, a man came up to the window and said that a man had been shot.  It was learned that about the same time Bruce Reliford was robbing the Vickers gas station, Shannon Wilson arrived at the Toddle House.  He ordered steak and eggs on this Christmas Eve morning.  He was a regular customer at the Toddle House and stopped by frequently after he got off work.  Shannon Wilson's car, a 1993 Toyota Corolla, was parked at the first parking spot on the left as you go out the front door.

16.     At approximately 6:57 a.m., one of the Toddle House waitresses stated that after hearing a boom, she noticed a black male in Mr. Wilson's car, in the driver's seat.  Wilson was starting to fall off the car to the ground beside the driver's door of the car, when the waitress called for help.

17.     Vincent Price and Suzanne Hendrix were also having breakfast at the Toddle House.  They were sitting in the second booth on the right hand side of the restaurant, facing Covington Pike.  Mr. Price heard a loud crunch.  He jumped up to see if there had been a wreck outside.  As soon as he walked toward the door he heard a loud bang.  He continued out the door where he saw a white male laying on the ground.  The man was yelling, "I've been shot."  There was a black male getting into a dark blue Toyota.  The suspect "looked dead at him" as he was getting into the car.  The man kept yelling, "I've been shot, I've been shot."  Price stepped back into the Toddle House because he was afraid that the suspect might try to shoot him until he got all the way into the car.  As soon as he got all the way into the car, Mr. Price went back out the door.  As the suspect was backing up, he turned and looked at Price again.  Price watched him back out, turn onto Covington Pike, and then go North on Raleigh-LaGrange.  Price then turned and went to the victim.  The victim was still yelling he couldn't believe he was shot.  Price went back into the restaurant, grabbed one of the patron[s'] shirts and went back out to the victim, and held his hand over the gunshot wound until the ambulance arrived.  During this time, the victim told Price that the guy who shot him took his car.  Mr. Price's girlfriend, Suzanne Hendrix, also witnessed the aftermath of the

shooting. She also went to assist the victim. The victim told Ms. Hendrix, "He shot me, I can't breathe." Then he said, "He shot me again." She put his coat on him to keep him warm and told him to relax, there was help on the way. A few minutes later the ambulance arrived and transported the victim, Shannon Wilson to the Regional Medical Center where he died at 1:04 p.m. While he was being transported to the Med and medical treatment was being administered, Mr. Wilson told the paramedics, "He shot me. Please don't let me die." He also told them, "He wanted my car, and he shot me anyway." The autopsy revealed a gunshot wound with the bullet entering the right chest area and exiting the right upper back area.

18.    At least two individuals positively identified Bruce Reliford as the person responsible for the robbery and shooting of Mr. Wilson. None of the witnesses observed a struggle between the victim and suspect.

19.    As officers were searching the crime scene, they found a green Celtic jacket, a brown paper bag containing $5,448 in cash, a $14 money order, a check for $35.35, and a key ring, with assorted keys, in a BFI dumpster at the rear of the Toddle House. The cash, money order, and check, along with the keys, were released to the Vickers store manager. The paper sack and Celtics jacket were tagged at the property room. That same afternoon, at approximately 1:30 p.m. officers received a call to the Toddle House at 2474 Covington Pike. Upon arriving on the scene, officers were given a spent bullet wrapped in a white napkin. The bullet was reportedly found by a patron at the Toddle House some time in the early afternoon.

20.    The investigation revealed that Bruce Reliford returned to meet Vita Powell in the apartments. He was in a car. He pulled the car into the apartments, got out and came across the street. He pointed the gun at the window and told Powell to open the door. She opened the door and let him in. Reliford instructed her to take him to Whitehaven. As they drove past the restaurant, Powell saw a man lying on the ground with a lot of people around. During the ride to Whitehaven, Reliford told her, "I tried to rob somebody and I made a mistake and shot somebody." Powell took Reliford to his cousin's apartment in Whitehaven. Upon arrival at the apartment he gave the gun to his cousin and told him to put it up. His cousin was identified as Meritt Loft[o]n. Inside apartment #4 at 1774 Chancery, w[ere] Meritt Loft[o]n, Angela Thomas, Vita Powell, and Larry Thompson. Reliford persuaded Loft[o]n, Thomas and Powell to return to the Vickers station to pick up the money that was left in the dumpster. Upon arrival on the scene, the place was buzzing with activity and police officers were on the scene. They drove off without incident. Bruce Reliford returned a third time with Larry Thompson and Vita Powell, also known as Lynn. Reliford persuaded Larry to get out and look in the dumpster for the money, but it was not there. After Reliford's picture appeared on the news, he was taken into custody. On Christmas Day, at

approximately 6:15 p.m., Angela Thomas contacted a Sergeant with the Memphis Police Department and advised that she had located a gun that was believed to have been used in a homicide. She stated that she had found it at 1774 Chancery, #4, in her "boyfriend's Dad's room, underneath the bunkbeds, inside a blue tennis shoe that had stripes."

According to the official laboratory report, there was gunshot residue found on Bruce Reliford's hand. Also, the official laboratory report indicated that the bullet which was recovered from the Toddle House parking lot was fired through the barrel of the revolver recovered from the Chancery Street apartment.

(PSR ¶¶ 10-20.)

A jury trial commenced on March 14, 1994, and on March 18, 1994, the jury returned a guilty verdict on all counts of the Indictment. (Min. Entries, *United States v. Reliford*, No. 2:93-cr-20107-JPM-1 (W.D. Tenn.), ECF Nos. 44, 48; *see also* Order on Jury Verdict, *id.*, ECF No. 51.) At a sentencing hearing on June 2, 1994, the Court sentenced Reliford to a term of life imprisonment on Count 1; five years on Count 2, to run consecutively to Count 1; and twenty years on Count 3, to run concurrently with Count 1. (Min. Entry, *id.*, ECF No. 56; J. in a Criminal Case, *id.*, ECF No. 59.) The Court also sentenced Reliford to a term of imprisonment of twenty years on Count 4 to run consecutively to the sentence imposed on Counts 1,2, and 3, all to be followed by a three-year period of supervised release. (Min. Entry, *id.*, ECF No. 56; J. in a Criminal Case, *id.*, ECF No. 59.) Judgment was entered on June 24, 1994. (J. in a Criminal Case, *id.*, ECF No. 59.)

Reliford appealed his sentence. (Notice of Appeal, *id.*, ECF No. 57.) On June 27, 1995, the United States Court of Appeals for the Sixth Circuit affirmed his conviction. *United States v. Reliford*, 58 F.3d 247 (6th Cir. 1995).

### B. Case Number 14-2163

On March 6, 2014, Reliford filed his *pro se* § 2255 Motion, accompanied by a legal memorandum. (§ 2255 Mot., *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1; *see also* Mem. in Supp. of § 2255 Mot., *id.*, ECF No. 1-1.) The motion presents three issues: (1) "Actual Innocence"; (2) "Tainted Illegal Lineup Identification"; and (3) "*Brady* violation." (§ 2255 Mot. at 5-8, *id.*, ECF No. 1.) On November 6, 2014, the Court directed the Government to respond. (Order, *id.*, ECF No. 3.) The Government responded in opposition on January 6, 2015. (Resp., *id.*, ECF No. 6.) Reliford filed a motion to appoint counsel under *United States v. Johnson*, 135 S. Ct. 2551 (2015), on June 8, 2016. (Mot. to Appoint Counsel, *id.*, ECF No. 8.)

### II. THE LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003).

"[A] § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.

2003).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."  *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously.  *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."  Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules").  "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."  *Id.* The movant is

entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III. MOTION TO APPOINT COUNSEL

Movant seeks the appointment of counsel because he believes that he is entitled to relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Mot. to Appoint Counsel, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 8.) This contention is without merit.

The ACCA provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title

and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

"Violent felony" is defined by the ACCA as a felony "that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The Supreme Court held in *Johnson* that the residual clause of the ACCA, encompassing all felonies that "involve[] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague and that the application of the residual clause to increase a sentence violated the Due Process Clause. 135 S. Ct. at 2557. The *Johnson* decision applies only to the residual clause and "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* at 2563. The Supreme Court has made *Johnson*'s rule retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) ("*Johnson* is thus a substantive decision and so has retroactive effect . . . .").

In the instant case, Reliford was not sentenced as an armed career criminal under the ACCA, nor was his sentence enhanced for prior convictions for violent felonies under the parallel residual clause in the United States Sentencing Guidelines. (*See* PSR ¶¶ 34, 43.) Accordingly, the holdings in *Johnson* and *Welch* have no bearing on Reliford's sentence. Reliford is not entitled to appointment of counsel pursuant to Administrative Order 2015-18 of the United States District Court for the Western District of Tennessee. The Motion to Appoint Counsel is, therefore, DENIED.

## IV.  ANALYSIS OF MOVANT'S CLAIMS

As an initial matter, the Court evaluates the timeliness of Reliford's § 2255 Motion.  The period of limitation under 28 U.S.C. § 2255 is one year.  28 U.S.C. § 2255(f).

> The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*  In Reliford's case, the applicable subsections are 28 U.S.C. § 2255(f)(1) and (4).

> [W]hen a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed.

*Sanchez-Castellano v. United States*, 358 F.3d 424, 426-27 (6th Cir. 2004).  Reliford did not file a petition for writ of certiorari, and thus, his conviction became final on September 25, 1995, ninety days after the Sixth Circuit affirmed his conviction and sentence.  *See* U.S. Sup. Ct. R. 13(1).  Reliford then had one year in which to file a timely § 2255 motion, but he filed the instant motion on March 6, 2014, approximately eighteen and one-half years after his conviction became final.[1]  Therefore, unless facts supporting Reliford's claims only became discoverable

---

[1] Under the prison mailroom filing rule of *Houston v. Lack*, 487 U.S. 266, 270-72 (1988), a prisoner's § 2255 motion "will be deemed timely filed if it is delivered to the proper prison authorities for forwarding to the district court within the time allotted for" a § 2255 motion. *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).  In the instant case, Reliford signed

through diligence after March 6, 2013, *see* 28 U.S.C. § 2255(f)(4), or Reliford can demonstrate that he is entitled to equitable tolling, his claims are time-barred.

Reliford alleges that the Government withheld six exculpatory witnesses and that these witnesses were "not discovered until the year 2007 and the investigation of withheld evidence led all the way into late 2013." (§ 2255 Mot. at 11, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1.) Specifically, Reliford alleges that the Government withheld the identities of Peggy Sue Osborne, Guthrie Anderson, David Adams, Shawn Williams, John Rye, and Linda Sue Ridgell. (Mem. in Supp. of § 2255 Mot. at PageID 18, *id.*, ECF No. 1-1.) Additionally, Reliford "asserts that his trial was rendered unfair due to the tainted identification process being admitted as evidence at trial." (*Id.* at PageID 19.) Reliford also offers the interview of Angela Thomas by Criminal Investigator Michael Cohan as new evidence of his innocence. (*Id.* at PageID 20-22.) The Court considers whether any of these pieces of evidence "reset[] the limitations period's beginning date" under 28 U.S.C. § 2255(f)(4). *Johnson v. United States*, 457 F. App'x 462, 468 (6th Cir. 2012) (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). The Court then considers whether Reliford is entitled to equitable tolling.

### A. Peggy Sue Osborne and Guthrie Anderson

Reliford alleges that the Government "withheld exculpatory evidence of eye witnesses," including Peggy Sue Osborne and Guthrie Anderson. (Mem. in Supp. of § 2255 Mot. at PageID 18, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1-1.) Reliford does not, however, explain how Osborne or Anderson would be exculpatory or when he

_____

his § 2255 motion on March 3, 2014. (§ 2255 Mot. at PageID 14, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1.) Accordingly, the mailbox rule is not relevant to the timeliness of Reliford's motion.

found out about these witnesses. Both Osborne and Anderson testified at Reliford's trial on March 16, 1994. (Ex. & Witness List, *United States v. Reliford*, No. 2:93-cr-20107-JPM-1 (W.D. Tenn.), ECF No. 50.) Anderson was a customer at Toddle House on December 24, 1992, and found a bullet in the parking lot. Osborne was the manager at Toddle House that day. Osborne testified that Anderson gave her the bullet that he found in the parking lot and that she then gave it to E. W. White, an off-duty officer. Neither Osborne nor Anderson was present at Toddle House during the carjacking that morning.

Because Reliford fails to demonstrate that a claim relating to the testimony of Osborne or Anderson has accrued since March 2013 under 28 U.S.C. § 2255(f)(4), his claim that the Government withheld these witnesses in violation of *Brady*[2] is time-barred. *See Johnson*, 457 F. App'x at 468 (observing that "28 U.S.C. § 2255(f)(4) 'resets the limitations period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued'" (quoting *Wims*, 225 F.3d at 190)).

### B. David Adams, Shawn Williams, and John Rye

Reliford also alleges that the Government withheld exculpatory witnesses David Adams, Shawn Williams, and John Rye. (Mem. in Supp. of § 2255 Mot. at PageID 18, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1-1.) Again, Reliford does not explain how Adams, Williams, or Rye would be exculpatory or when he found out about these witnesses. While these individuals did not testify at Reliford's 1994 trial, Adams and Rye were identified in the second Memphis Police Department Supplementary Offense Report. (Attachment J, *id.*, ECF No. 6-10.) Williams provided a witness statement to officers on the day

---

[2] In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

of the incident. (Attachment K, *id.*, ECF No. 6-11.) None of these individuals indicated that they would be able to identify the shooter and none of these individuals was presented with a lineup. The witnesses' inability to identify a shooter was not exculpatory. *See Hendricks v. Warden, Lebanon Corr. Inst.*, No. 1:12-cv-213, 2014 WL 2006786, at *11 (S.D. Ohio May 16, 2014). Thus, regardless of when Reliford discovered these witnesses, he has not shown that their testimony would support his claims. If any of these witnesses had been presented with a lineup and had identified someone else, the Government had failed to disclose this fact, and Reliford discovered the fact only recently, then Reliford may have been able to bring a *Brady* claim under 28 U.S.C. § 2255(f)(4). Because Reliford fails to demonstrate that these witnesses would support his claims and fails to show that a claim relating to the testimony of Adams, Williams, or Rye has accrued since March 2013, his claim that the Government withheld these witnesses in violation of *Brady* is time-barred.

### C. Linda Sue Ridgell

Reliford alleges that the Government withheld exculpatory witness Linda Sue Ridgell, who "testified during Petitioner[']s State trial that she did in fact witness the carjacking and shooting death of Shannon Wilson and that Petitioner was not the shooter." (Mem. in Supp. of § 2255 Mot. at PageID 19, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1-1.) According to Reliford, Ridgell also provided an oral statement to the Memphis Police Department that the shooter had sideburns, but Reliford did not have sideburns. (*Id.*) The Government asserts that it disclosed Ridgell before Reliford's 1994 trial. (Resp. at 16, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 6.) Because Ridgell also testified at Reliford's state trial in 2007, the Government maintains that Reliford's claim is time-barred. The Court agrees.

The transcript from trial reflects that the Government did disclose to defense counsel that an individual, namely Ridgell, identified an individual other than Reliford during the lineup. (Attachment G, Trial Tr. 362:3-363:9, Mar. 16, 1994, *id.*, ECF No. 6-7; Attachment H, Trial Tr. 371:19-372:4, Mar. 16, 1994, *id.*, ECF No. 6-8.) Additionally, the lineup form, marked for identification as Exhibit 41 at trial and provided to defense counsel, identifies Ridgell and indicates that she identified an individual other than Reliford during the lineup. (Attachment B, *id.*, ECF No. 6-2; Attachment C, *id.*, ECF No. 6-3; *see also* Ex. 41, Ex. & Witness List, *United States v. Reliford*, No. 2:93-cr-20107-JPM-1 (W.D. Tenn.), ECF No. 50.) Thus, in 1994, Reliford knew the identity of Ridgell and that she had identified another individual as the shooter.[3]

Moreover, Ridgell testified as to this fact during Reliford's 2007 state trial. (Attachment I, State Trial Tr. 882:17-19, 911:12-912:17, 915:2-4, Oct. 29, 2007, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 6-9.) The latest that Reliford could have found out about Ridgell's exculpatory identification, therefore, was October 29, 2007. Accordingly, Reliford fails to demonstrate that a claim relating to the testimony of Ridgell has accrued since March 2013 under 28 U.S.C. § 2255(f)(4). His claim that the Government withheld this witness in violation of *Brady* is therefore time-barred.

### D.    Lineup Procedures

Reliford alleges that the lineup procedures were tainted by a "witness outburst identification." (Mem. in Supp. of § 2255 Mot. at PageID 23, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1-1.)

---

[3] Although Ridgell identified an individual other than Reliford, she did not identify Lofton, who was in the second line-up and who Reliford asserts was the shooter. (*See* Attachment C, *id.*, ECF No. 6-3; Mem. in Supp. of § 2255 Mot. at PageID 17, *id.*, ECF No. 1-1.)

At Reliford's 2007 trial, Linda Sue Ridgell and Ruby Wilson-Woods testified that a female witness said, "That's him, that's him" at some point during the lineup. (Ex. I., State Trial Tr. 887:7-16, Oct. 29, 2007, *id.*, ECF No. 6-9; Ex. L, State Trial Tr. 959:10-20, Oct. 29, 2007, *id.*, ECF No. 6-12.) Regardless of whether this statement was unduly suggestive,[4] Reliford knew about any issues with the identifications and the lineup in 2007, when Ridgell and Wilson-Woods testified at his state trial. Thus, Reliford fails to demonstrate that any claim relating to the lineup has accrued since March 2013. Accordingly, his claim that the lineup procedures were tainted is time-barred.

### E.    Angela Thomas

Reliford also argues that Angela Thomas's confession that Meritt Lofton was the shooter in the carjacking is new evidence that entitles him to relief. (Mem. in Supp. of § 2255 Mot. at

---

[4] The Government argues that this statement was not unduly suggestive because the police officers were not responsible for the witness's statement, the statement did not affect the identifications, and the identifications by Vincent Price and Suzanne Hendrix were nonetheless reliable. (Resp. at 31-33, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 6.) The Supreme Court has explained,

> When no improper law enforcement activity is involved . . . , it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Perry v. New Hampshire*, 132 S. Ct. 716, 721 (2012). In other words, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id.* at 728.

Reliford does not allege that the police officers created suggestive circumstances at the lineup. Rather, he alleges only that one of the witnesses made a comment which tainted later identifications. Under *Perry*, "the general reliability of an identification is not a reason to exclude it unless the procedure used to procure the identification is first proven to be unduly suggestive due to police misconduct." *Howard v. Warden, Lebanon Corr. Inst.*, 519 F. App'x 360, 368 (6th Cir. 2013). Because there is no evidence of police misconduct, the Court need not consider the general reliability of the identifications. Thus, even if this claim were not time-barred, Reliford would not be entitled to relief as to this ground.

PageID 20-22, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1-1.) Reliford submits an exhibit titled "Newly Presented Evidence," which purports to be the transcript of an interview of Angela Thomas by investigator Michael J. Cohan on November 9, 2005. (Thomas Interview, *id.*, ECF No. 1-7.) During this interview, Thomas stated that she had "heard [Lofton] had told this girl that he was dealing with that he had something to do with that murder." (*Id.* at 14.) According to Thomas, Lofton "is the most appropriate candidate" to be the shooter. (*Id.* at 15.)

The Government objects to this evidence as not properly authenticated. (Resp. at 35, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 6.) The Government further argues that this transcript is not "newly discovered" evidence of "actual innocence." (*Id.*) The Court agrees.

Taking as accurate the date of November 9, 2005, indicated on the interview transcript, Reliford knew about Thomas's statements approximately eight and one-half years before he filed his § 2255 motion. Accordingly, he cannot demonstrate that facts supporting his claim were discovered or could have been discovered by due diligence since March 2013. Reliford's claim is therefore time-barred. The Court need not consider the merits of Reliford's claim of actual innocence based on Thomas's statements.[5]

### F.     Equitable Tolling

The one-year statute of limitations in 28 U.S.C. § 2255(f) is subject to equitable tolling under extraordinary circumstances. *Reed v. United States*, 13 F. App'x 311, 312 (6th Cir. 2001).

---

[5] Even if the Court did consider Thomas's statements, which were not properly authenticated, statements "by witnesses recanting their trial testimony are looked upon with extreme suspicion." *United States v. Coker*, 23 F. App'x 411, 412 (6th Cir. 2001). As discussed below, Thomas's statements to Cohan were inconsistent with her trial testimony. *See infra* pp.19-20. Moreover, the Government presented overwhelming evidence of Reliford's guilt at trial, and sufficient evidence existed to convict Reliford, even without Thomas's testimony.

When determining whether equitable tolling is appropriate, the Sixth Circuit applies a five-factor balancing test, which weighs:

> (1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Moore v. United States*, 438 F. App'x 445, 449 (6th Cir. 2011) (alteration in original) (quoting *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006)).  "Where, as here, the petitioner does not claim ignorance of the filing requirement, the court must focus its inquiry on the petitioner's diligence and 'the reasonableness of his ignorance of the effect of his delay.'" *Id.* (quoting *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004)).

Equitable tolling may also be appropriate in an "extraordinary case," where the movant makes a credible showing of actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005).  "To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 327).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Attacks on a witness's credibility "do not provide [sufficient] proof of 'actual innocence.'" *In re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001).

According to Reliford, "[a]ll of the evidence of [Angela Thomas's] sworn testimony" as well as "the withheld witness list" are "newly available and newly presented." (Mem. in Supp. of § 2255 Mot. at PageID 24, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.),

ECF No. 1-1.) Reliford maintains that this evidence demonstrates that he did not commit the carjacking of Shannon Wilson. (*Id.* at PageID 19-20.) As discussed above, however, Reliford knew of all of the purportedly "newly discovered" evidence by no later than his October 2007 state trial. Reliford does not allege that he was ignorant of the filing requirement under 28 U.S.C. § 2255(f). Nor does it appear that Reliford was diligent in pursuing his rights between his October 2007 state trial and the filing of his § 2255 motion in March 2014.

Moreover, Reliford has not made a credible showing of actual innocence. The only witness who identified an individual other than Reliford as the shooter was Ridgell. On December 26, 1992, Ridgell provided a statement to Sergeant A. J. Pinnow of the Memphis Police Department as to the homicide of Shannon Wilson. (Attachment F, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 6-6.) Ridgell stated that she thought "[t]he first line-up, the last person number six" looked like Wilson's shooter, "but [she] wasn't quite sure." (*Id.* at PageID 230.) At Reliford's 2007 state trial, Ridgell testified that she "never did get a good look at the person" who shot Wilson. (Attachment I, State Trial Tr. 889:9-12, Oct. 29, 2007, *Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 6-9.) Thus, Ridgell's incorrect identification is not particularly probative of Reliford's actual innocence and is not a sufficient basis for equitable tolling in light of the fact that her identity was provided to the defense before Reliford's 1994 federal trial.

Similarly, as discussed above, the "witness outburst" at the lineup is not considered unduly suggestive and was known to the defense no later than 2007. *See supra* Part IV.D. Angela Thomas's unauthenticated statement to Cohan that she believed Lofton was "the most appropriate candidate" because "he's usually in the front on a lot of things that they have done" is also not probative of Reliford's actual innocence. (Thomas Interview at PageID 164, *id.*,

*Reliford v. United States*, No. 2:14-cv-02163-JPM-cgc (W.D. Tenn.), ECF No. 1-7.) At Reliford's 1994 trial, Thomas testified that Reliford came to her house around 7:30 a.m. on December 24, 1992, and gave Lofton a firearm, which they took upstairs. Although Thomas's 2005 statement to Cohan is somewhat inconsistent with her trial testimony, this merely weakens Thomas's credibility but does not sufficiently demonstrate that Reliford is actually innocent. At Reliford's 1994 trial, "the evidence of Reliford's guilt was overwhelming." *United States v. Reliford*, 58 F.3d 247, 251 (6th Cir. 1995). Thus, the attack on Thomas's credibility "do[es] not provide proof of 'actual innocence.'" *In re Byrd*, 269 F.3d at 577.

Because Reliford has not made a credible showing of actual innocence, the Court finds no basis for equitable tolling. Reliford's claim is time-barred, and his § 2255 motion may be dismissed without an analysis on the merits.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules. The Court finds that the motion may be resolved without an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Movant's § 2255 Motion is DENIED as time-barred. Judgment shall be entered for the United States.

V.        **APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ((quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

There can be no question that the issues raised in Movant's § 2255 Motion are meritless for the reasons previously stated. Because any appeal by Movant on the issues raised in his § 2255 Motion does not merit further review, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides, however, that if the district court certifies that an appeal would not be taken in good

faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (3)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[6]

IT IS SO ORDERED this 13th day of July, 2016.


/s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[6] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.